IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS EXCAVATION SAFETY SYSTEM, INC., d/b/a TEXAS811, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-cv-02827 |
| ONE CALL CONCEPTS, INC., d/b/a LONE STAR 811, | § § § | |
| Defendant. | § § | |

### TEXAS EXCAVATION SAFETY SYSTEM, INC.'S
### AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiff, TEXAS EXCAVATION SAFETY SYSTEM, INC., d/b/a TEXAS811 ("Texas811"), files

its Amended Complaint against Defendant, ONE CALL CONCEPTS, INC., d/b/a LONE STAR 811

("Lone Star") and shows the Court the following:

### SUMMARY STATEMENT

1.      "Know What's Below. Call 811 Before you Dig."  Many Texans have heard this

mantra.   Texas excavators know that the Texas Utilities Code requires them to contact a

"Notification Center" before they dig.  Few Texans know what happens after they dial 811 or

contact a Notification Center on the internet.  For calls to 811, after entering the number, a call

routing system routes the call to one of two Notification Centers: Texas811, or Lone Star.  The

Notification Center's representative answers the call and collects information regarding the

planned Excavation or processes that information provided on the internet.  Once the location of

the Excavation is determined, the Notification Center sends notice of the Excavation to (1) any

Operator of an Underground Facility participating in the Notification Center whose facilities may

be in the area of Excavation[1], and (2) to every other Notification Center in Texas.[2]  Under the relevant statutes, a Notification Center shall recover an amount not exceeding the actual cost of providing notice to the other Notification Center.  This lawsuit is about Texas811's efforts to recover that cost.

2.      Texas811 seeks a declaratory judgment under 28 U.S.C. § 2201 declaring its rights and other legal relations with Lone Star under the Texas Underground Facility Damage Prevention and Safety Act, commonly known as the Texas One-Call law (the "Act").  Tex. Util. Code § 251.001 *et. seq.*  Texas811 and Lone Star each are Notification Centers registered with the Texas Underground Facility Notification Corporation (commonly known as the "One Call Board"), as required by §§ 251.060(1)(A) and 251.101(a)(3), (b) of the Act.  Section 251.153(b) of the Act requires Texas811 to provide Lone Star "the information required by Section 251.152 [of the Act] and received from [an] excavator."  Similarly, subsections 251.102(2) and (3) of the Act require Notification Centers, including Texas811, to "have the capability to receive" and "disseminate" emergency and extraordinary circumstance "information [received from excavators]" "as soon as it is received" "to all registered and affected notification centers." Section 251.105(a) of the Act states that "[a] notification center that notifies another notification center under § 251.102(2) or (3) or § 251.153(b) shall recover an amount not exceeding the actual cost of providing the notice from the notification center receiving the notice."

3.      An actual controversy within this Court's jurisdiction exists between Texas811 and Lone Star regarding the scope and extent of Texas811's rights, and the amount it may recover from Lone Star, under § 251.105(a) of the Act.  Texas811 seeks this Court's declaration

---

[1]      With few exceptions, every Operator of an Underground Facility in Texas is required to participate in a Notification Center.

[2]      Currently, Texas811 and Lone Star are the only two Notification Centers in Texas.

of Texas811's "rights and other legal relations" (28 U.S.C. § 2201) with Lone Star regarding those issues. Texas811 additionally seeks "[f]urther necessary or proper relief" available to it under 28 U.S.C. § 2202, including, without limitation, a judgment, up to the date of said judgment, for Texas811's recovery from Lone Star of any past actual costs unpaid by Lone Star and which the Court determines Texas811 is entitled to recover, and its reasonable attorneys' fees and costs.

4.     Texas811 also seeks to recover damages it has suffered as a result of Lone Star's practices in violation of the §43(a) of the Lanham Act, 15 U.S.C. §1125(a) and the Texas common law of unfair competition. In part as a result of the requirements of the One Call Act, when Texas811 intakes information and creates a ticket, it sends the information it gathers to Lone Star. Lone Star takes Texas811's work product and designates it as a Lone Star ticket. Because 80% of OILRs originate through Texas811, 80% of resulting tickets are Texas811's work product. Lone Star has used misleading advertising and marketing practices to compete unfairly with Texas811. Namely, Lone Star tells Texas811 customers to compare a Lone Star ticket with a Texas811 ticket. Because 80% of the tickets being compared are actually Texas811's tickets, the comparison suggests the two notification centers provide comparable work product. By inviting such a comparison, Lone Star is misleading customers with respect to the nature and origin of the work product – the ticket. Texas811 has learned of this side-by-side marketing technique as a result of attempts by Lone Star to solicit Texas811's customers, some of whom have actually left Texas811 for Lone Star.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between

citizens of different states.  During the twelve (12) month period beginning September 2017 and concluding August 2018, Texas811 provided Lone Star information as required by the Act for 2,676,244 Original Incoming Locate Requests ("OILR") and representing an average rate of 223,020 OILR per month.  Texas811 has calculated its average, actual cost of providing that information to Lone Star during that period was at least $0.95 per OILR, or at least $211,869.00 per month.  Similarly, as of September 1, 2018, after notifying Lone Star, Texas811 began charging Lone Star for the information provided by Texas811 to Lone Star under the Act. Texas811 incurred in September 2018 an actual cost of at least $0.95 for the 201,967 notices provided to Lone Star for a total charge of $191,868.65.  Texas811 has projected that the volume and cost per OILR will remain at least at these approximate levels, if not more, at all times prior to the trial of this case and after.  Accordingly, the amount in controversy exceeds the $75,000.00 minimum, exclusive of interest and costs, required by 28 U.S.C. § 1332(a)(1).  Moreover, as also more fully alleged below, Texas811 and Lone Star are citizens of different states, as also required by 28 U.S.C. § 1332(a)(1), in that:

(a)     Texas811 is a citizen of the State of Texas because it is incorporated as a non-profit corporation under Texas law and its principal place of business is located in Texas; and,

(b)     Lone Star is a citizen of the State of Maryland because it is incorporated under Maryland law and its principal place of business is located in that state.

6.     This Court also has jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1121(a) in that claims for relief are asserted in this Amended Complaint under §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

7.      In the further alternative, because this Court has original jurisdiction under 15 U.S.C. §1121(a), 28 U.S.C. §§1331 and 1332(a)(1), this Court has supplemental jurisdiction under 28 U.S.C. §1367(a) over all related claims for relief asserted in this action over which it might not otherwise have original jurisdiction.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(2) and (d).  Lone Star resides in this district, as provided by 28 U.S.C. § 1391(c)(2) and (d), because it is subject to this Court's personal jurisdiction in that:

(a)      At all times after, and at least as early as July 6, 1992, Lone Star has maintained a foreign corporation registration with the Secretary of State of Texas authorizing it to transact business throughout this State;

(b)      On December 29, 2011, Lone Star filed with the Secretary of State of Texas a Certificate of Assumed Business Name stating that it would  conduct business in all counties of this State under its assumed name, Lone Star 811; and,

(c)      At all times after the effective date of the Act in 1997, Lone Star has operated as a Notification Center registered with the One Call Board and, upon information and belief, has provided services to Operators, as defined in § 251.002(ii) of the Act, which have underground facilities located in this district, and has sent notices of excavation tickets to those Operators, including for excavation notices originally received by Texas811 and provided to Lone Star as required by the Act.

9.      Moreover, venue is also proper in this district because a substantial part of the events giving rise to this Complaint occurred in this district, as required by 28 U.S.C. § 1391(b)(2), in that:

(a)     Texas811 incurred in this district the actual costs it is entitled to recover, and for which it seeks a declaratory judgment, under § 251.105(a) of the Act;

(b)     Texas811 has sent, from offices located in this district, the notices it is required to provide to Lone Star under § 251.153(b) of the Act;

(c)     Texas811 has sent, and will be sending, from its offices in this district, the invoices to Lone Star as permitted by § 251.105(a) of the Act and payment of those invoices will be due to Texas811's offices;

(d)     Upon information and belief, Lone Star has undertaken in this district some of the actions which violate the Lanham Act and the Texas common law of unfair competition as more fully alleged in this Amended Complaint; and,

(e)     The damages suffered by Tecas811 as a result of Lone Star's violations of the Lanham Act and the Texas common law of unfair competition have occurred in this district.

## THE PARTIES

10.     Texas811 is a Texas Non-Profit Corporation with its principal place of business in Dallas, Texas.

11.     Lone Star is a Maryland for-profit corporation with its principal place of business in Hanover, Maryland.  Lone Star has been served.

## STATEMENT OF FACTS

12.     Texas811 is one of two "Notification Centers" operating in the State of Texas as defined by the Act.  *See* §§ 251.060(1)(A) and 251.101(a)(3), (b) of the Act.  Texas811, as a non-profit corporation, has members as permitted by Art. 1396-2.08, Texas Business Organizations Code.  Texas811's by-laws provide for two classes of members, General and Sustaining.  Its

General Members include Operators of Underground Facilities, as the Act defines each of those terms.  The General Members elect annually Texas811's Board of Directors.

13.     Lone Star is also a Notification Center operating in Texas under the Act.  The Operators who choose to participate in Lone Star's Notification Center do not select Lone Star's board or management.

14.     The Act defines the duties of the various persons and entities subject to its provisions, including the duties of Notification Centers such as Texas811 and Lone Star. Pursuant to § 251.001 of the Act, all Operators of Class "A" underground facilities (such as, for example, fiber optic lines, telephone lines and natural gas pipelines) must participate in one of the two Notification Centers.  *See* § 251.007 of the Act.  ("Class 'A' Facility Owner" is defined at § 251.002(1) of the Act).

15.     The One Call Board has published on its website a general description of how the One Call System works.  *See* http://www.onecalltexas.com, accessed 10/22/18, a copy of which is attached for illustrative purposes as Exhibit "A."  A further description of the process follows in paragraphs 16-21, below.

16.     Generally, as provided by the Act, any person or entity that plans to excavate more than 16 inches deep (an "Excavation" and an "Excavator" as defined by § 251.002(5), (6) of the Act) is required to contact any one of the two Notification Centers and make a locate request (also known as a "notice of intent to excavate") so that underground lines in the vicinity of the Excavation can be located and marked if appropriate by the "facility owner."  The Excavator may contact a Notification Center by one of several different ways, including (i) calling a statewide number, which routes the call to one of the notification centers, (ii) calling Texas811 directly, or (iii) contacting either center electronically and using web-based

notification programs.  The Notification Center contacted by the Excavator then identifies its own member facility owners who may have underground lines in the area of the Excavation and then notifies them, usually by electronically sending a locate "ticket."

17.     The Notification Center receiving a notice of intent to excavate from an Excavator also must notify the other Notification Center by electronically forwarding the information that Excavators are required to provide under the Act.  In turn, the Notification Center receiving that forwarded information must identify which, if any, of its own customer facility owners may have underground lines in the vicinity of the proposed Excavation and notify those facility owners. The facility owners who receive a notice – known as a ticket – from their Notification Center must then determine whether their underground lines are in the vicinity of the Excavation and mark them by staking or spray painting them accordingly.

18.     Section 251.153 identifies the duties of a Notification Center.  It provides in pertinent part as follows:

> (b)     Not later than two hours after the time the notification center receives a notice of intent to excavate from an excavator, the notification center shall provide to every other affected notification center operating in this state, the information required by § 251.152 and received from the excavator. . . .

19.     Section 251.152(1)-(7) sets forth the information that an Excavator is to convey to a Notification Center:

> (a)     the name of the person serving the notice;

> (b)     the location of the proposed area of excavation, including:

> (i)     the street address, if available, and the location of the excavation at the street address; or

> (ii)     if there is no street address, an accurate description of the excavation area using any available designations such as the closest street, road, or intersection;

(c)      the name, address, and telephone number of the excavator or the excavator's company;

(d)      the excavator's field telephone number, if one is available;

(e)      a telephone facsimile number, e-mail address, or another electronic number or address approved by the board to which an operator may send the notification required by § 251.157(d);

(f)      the starting date and time and the anticipated completion date of excavation; and,

(g)      a statement as to whether explosives will be used.

20.      The Act merely requires the Notification Center receiving the notice of intent to excavate to convey to the other Notification Center the information shared by the Excavator required by § 251.152(1)-(7).  It does not require the Notification Center receiving the notice of intent to excavate to send anything more or different than the information that the Excavator is required to provide by § 251.152(1)-(7).  *See*, Order [ECF 34] at 7 (unpublished), *Texas Excavation Safety System, Inc. v. One Call Systems d/b/a Texas One Call System, Inc.*, No. 3:09-CV-1537-P (N.D.Tex. Ap. 20, 2010) (Solis, J.) ("… [Section] 251.153 [of the Act] only requires a notification center to forward the raw information reported by an Excavator complying with § 251.152.").

21.      Section 251.105(a) of the Act also allows the Notification Center providing information to the other notification center to recover its actual costs.  That section states:

FEES AND CHARGES.    (a)    A notification center that notifies another notification center under Section 251.102(2) or (3) or Section 251.153(b) shall recover an amount not exceeding the actual cost of providing the notice from the notification center receiving the notice.

22.      In addition to investing in technology, Texas811 has committed to Excavator safety by getting the word out in Texas, through advertising and free seminars, to "call before you dig." Partially as a result of its safety advertising, Texas811 fields, and has for a number of

years, approximately 80% of direct Excavator locate calls and electronic requests. Evidence indicates that this substantial usage of Texas811 is Excavator preference, even when the Excavators know the alternative means for initiating requests.

23.     To safely handle its volume of OILRs from Excavators, Texas811 has committed to hiring and training the number of Damage Prevention Agents necessary to take each call or process electronic locate requests within the required time limits and other requirements of the Act or set by the One Call Board. Texas811 further employs Quality Assurance personnel to ensure the quality of Texas811's work product. Texas811 commits significant time and resources to training and re-training its staff for this purpose.

24.     Also, in order to gather completely the information required under § 251.152(1)-(7) of the Act, Texas811 has made significant investments in hardware, software, communications lines and its facilities.

25.     Because 80% of OILRs originate through Texas811 and Texas811 forwards the information it gathers to Lone Star, 80% of Lone Star's tickets are automatically populated using Texas811's work product. The resulting "Lone Star" ticket is merely Texas811's work product labelled as Lone Star's ticket. Because the information comprising the ticket originated in Texas811's notification center, the ticket benefits from the above training and technology investment by Texas811.

26.     During the twelve (12) month period beginning September 2017, and concluding August 2018, Texas811 provided Lone Star information as required by the Act for 2,676,244 OILRs, representing an average rate of 223,020 notices per month.

27.     The actual cost to provide the notices to Lone Star includes an allocable share of Texas811's actual, current costs, whether fixed or variable, attributable to the OILRs which

5353540.1

Texas811 receives, processes and sends notice to Lone Star under §§ 251.153(b) or 251.102(2), (3) of the Act.

28.     Texas811 has calculated its actual cost of providing that information to Lone Star during the period of September 2017, through August 2018, was at least $0.95 per notice, or at least $211,869.00 per month.  The actual costs included in the calculations of these amounts per notice include an allocable share of Texas811's actual costs for labor, internet, telephone, and software licensing and usage attributable to Texas811's receipt and processing of notices of intent to excavate which it provides to Lone Star as required by the Act.  Texas811's other actual costs, including rent, general and administrative costs, mapping software, costs incurred for servicing one call operations for other states, and non-current costs, were not included in the calculation.   The actual costs included in these calculations represent less than 15% of Texas811's total monthly expense burden.   Thus, inclusion of these costs (labor, internet, telephone, software licensing and usage) does not exceed the actual cost to Texas811 to provide the notice to Lone Star.  Texas811 projects that the volume and cost per notice will remain at least at these levels, if not more, at all times prior to the trial of this case and after.

29.     By letter dated July 2, 2018, to Lone Star, Texas811 noted the volume of original inbound locate requests that it handles, that the approximate 80% volume it currently handles has remained steady for several years and that as a result it "bears the cost of a vast majority of the One Call work in Texas."  Therefore, Texas811 advised Lone Star that it intends "to begin cost recovery as [the Act] requires" and that Lone Star would be entitled to recover its similarly incurred costs.

30.     By letter dated July 12, 2018, Lone Star's counsel responded and disputed Texas811's right to recover the actual costs sought by Texas811.

5353540.1

31.     Thereafter, Texas811 and Lone Star further communicated regarding the issues raised in the July 2, 2018, letter, and Texas811 temporarily delayed until September 1, 2018, implementation of its plan to begin charging Lone Star for its actual costs recoverable under §251.105(a) of the Act.

32.     During the month of September and October 2018, Texas811 provided Lone Star the required information for 201,967 and 231,029 notices of intent to excavate, respectively. Thereafter, Texas811 sent an invoice dated October 22, 2018 and November 8, 2018 to Lone Star seeking payment of $0.95 per notice, for a total of $191,868.65 and $219,477.55, respectively. True and correct copies of those invoices are attached as Exhibits "B" and "C." Texas811 subsequently issued invoices for November and December 2018. Texas811 provided to Lonestar 217,475 notices of intent to excavate for November, and 182,253 for in December. Texas811 issued invoices priced at $0.95 per notice of intent to excavate for November and December of $206,601.25 and $173,140.35 respectively. True and correct copies of those invoices are attached as Exhibits "D" and "E." Texas811 anticipates sending similar invoices each month thereafter. The $0.95 per notice actually charged by Texas811does not exceed Texas811's actual cost, as detailed above, of providing the notices to Lone Star. Texas811 charges its members the same amount for tickets sent to them as a result of any notice of intent to excavate for which they are notified.

33.     Prior to Texas811 sending the invoice attached as Exhibit "B," Lone Star advised Texas811 that it would not pay Texas811's invoices for the actual costs claimed under § 251.105(a).  Unless Texas811's actual costs are paid as required by §251.105(a) of the Act, Texas811 will continue to subsidize Lone Star's operations by saving Lone Star the costs necessarily incurred to receive and process OILRs from Excavators in this State.

34.     Texas' One Call system is free for the Excavators who submit locate requests. The Operators of underground facilities are the largest source of funding for the system. Notification Centers such a Texas811 and Lone Star charge their members for each notification sent to the member. That is the principal source of revenues for both the Notification Centers and for the One Call Board. Free market competition for customers in the one call marketplace, then, takes the form of competition for the membership of the Operators.

35.     Texas811 has historically chosen to compete by providing tickets of superior quality and exceptional customer service. Texas811's investment in technology, training, and quality assurance is a direct product of that competitive strategy. As a result of those investments and Texas811's competitive strategy, Texas811's work product – the "ticket" and the information therein – is of particularly high quality.

36.     As discussed above, Texas law requires Notification Centers like Texas811 and Lone Star to share certain information with each other.  In compliance with relevant statutes, Texas811 shares the statutory information it is required to gather and share.  Texas811 currently provides certain additional information as well.  Pursuant to statute, that information must be transferred via high speed data transmission.  Per the agreement of Texas811 and Lone Star, that transfer is currently accomplished by use of FTP data sharing across interstate telecommunication lines.  On information and belief, the information Texas811 transmits to Lone Star is delivered to Lone Star's parent company's facilities in Maryland.  This process permits the transmission of raw data from Texas811 to Lone Star.  Upon information and belief, based on representations from Lone Star representatives, Lone Star utilizes automated processes to convert the raw data into a form of ticket, which Lone Star then sends directly to Lone Star's affected members.

37.     For 80% of all OILRs, the information Texas811 gathers is provided to Lone Star through the above process.  The ticket that results from Lone Star's automated processing of Texas811's information, which ticket benefits from Texas811's technology, training, and quality assurance investments, appears to originate from Lone Star's notification center.  As a result, 80% of the tickets Lone Star's customers receive are Texas811's work product that Lone Star automatically reformats as its own.  It is this circumstance that creates the environment for unfair competition, misappropriation and violations of the Lanham Act as more fully set forth below.

38.     Lone Star has engaged in misleading and false advertising and marketing tactics by representing or indicating that the tickets created from Texas811's work product are the product of Lone Star's processes.  As noted above, Texas811 competes in the one-call marketplace by providing a higher quality ticket using more and more detailed information. Seizing on the opportunity provided by the statutory sharing provision, Lone Star has caused confusion among certain Texas811 customers by encouraging a comparison of "Lone Star's" ticket to Texas811's ticket, and alternatively, on information and belief, by making false statements regarding the origin of Lone Star's ticket.  Because 80% of Lone Star's tickets are actually Texas811's tickets reformatted to Lone Star's form, however, Texas811's existing and potential customers are really comparing a Texas811 ticket to a Texas811 ticket. Lone Star then tells the customer Lone Star provides the same quality for a lower price.  Relying on these representations, numerous Texas811 customers have terminated their membership with Texas811 and joined Lone Star's membership.

## CLAIMS FOR RELIEF

### *Count I*
### *Request for Declaratory Judgment*

39.     Texas811 incorporates by reference all of the foregoing paragraphs.

40.     The present controversy exists because Lone Star asserts that Texas811 may not recover its actual costs of providing notices to Lone Star as permitted by § 251.105(a) of the Act. Lone Star has denied that Texas811 may recover the allocable share of its actual, current costs, whether fixed or variable, attributable to the OILRs that it receives, processes and sends notice of, to Lone Star.  (Def. One Call Concepts, Inc.'s Orig. Ans., filed 11/16/18, ECF # 6, at ¶¶'s 32, 34).  Lone Star further contends that Texas811 may recover only the costs "associated with transmittal or delivery of a notice from one notification center to another."  (*Id*., at ¶24). Lone Star's position forces Texas811 to subsidize Lone Star's operations by saving Lone Star a significant portion of the costs necessarily incurred to receive and process OILRs from Excavators in this State. This subsidy constitutes a "free-ride" by Lone Star on the time, expenses and investment of Texas811 as more detailed above.

41.     Texas811 seeks a declaration of its rights under the Act to recover its "actual costs of providing the notice[s]" to Lone Star.  Specifically, Texas811 seeks this Court's declaration that § 251.105(a) of the Act permits Texas811 to recover from Lone Star the allocable share of its actual, current costs, whether fixed or variable, attributable to the OILRs which it receives, processes and sends notice of, to Lone Star under §§ 251.153(b) or 251.102(2), (3) of the Act. Texas811 also seeks a declaration that its invoices which it has provided or will provide to Lone Star prior to trial are for amounts which do not exceed Texas811's actual cost of providing the notices under the Act.

42.     In the event the Court does not ultimately make the declaration Texas811 requests regarding the actual costs it may recover under §251.105(a) is unambiguously warranted as a matter of law, then, in the alternative, Texas811 seeks a declaration that its construction is a reasonable construction of the statute.  In that event, and in resolving any ambiguity arising from

multiple, reasonable constructions, Texas811 contends that it is still entitled to the requested declaration.  In the further alternative, and if the Court does not enter Texas811's requested declaration, Texas811 requests that the Court reject Lone Star's limited construction that Texas811 is only entitled to recover costs associated with transmittal or delivery of a notice from one notification center to another and declare the scope and magnitude of the costs that Texas811 may recover.

43.     In construing §251.105(a), whether the Court determines an ambiguity exists or not, the Court may consider the technical meaning of "actual cost of providing the notice" in accordance with cost accounting principles.  TEX.GOV'T CODE §§311.011(b), 312.002(b).  Further, the Court may ascertain legislative intent by considering not only "the old law, the evil, and the remedy," §311.005, but also the seven factors listed in TEX.GOV'T CODE §311.023.  Those factors include the circumstances under which the One Call Act was enacted, its legislative history and the consequences of a particular construction, including the "free-ride" afforded to Lone Star if its proposed construction is adopted.  Each of these factors enumerated in the identified sections of the Texas Government Code, including the technical meaning of the statute under cost accounting principles, as well as §§311.023 & 312.005, support the declaration sought by Texas811.

44.     Pursuant to 28 U.S.C. § 2202, Texas811 further seeks judgment for any unpaid invoices, prejudgment interest at the maximum rate allowed by law on such invoiced amounts as well its reasonable and necessary attorneys' fees in seeking and obtaining the declaratory judgment and other relief, and its costs.

### Count II
### Violation of §43(a) of the Lanham Act, 15 U.S.C. §125(a)

45.     Texas811 incorporates by reference all of the foregoing paragraphs.

46.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitled "False designation of origin, false descriptions, and dilution forbidden," provides in pertinent part:

a.     Civil action

(1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)     in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

47.     Lone Star used and/or continues to use, in commerce, false or misleading descriptions of fact, and/or false or misleading representations of fact, which were actually false, misrepresented, and were likely to cause and/or did cause confusion and mistake or to deceive, regarding the origin, connection, and sponsorship of the tickets created by Texas811 and/or its goods, services and/or work product, and regarding the characteristics and qualities of Lone Star's goods, services, and/or work product.

48.     Lone Star's representations, statements, and comments include, for example, those made to representatives of at least one customer of Texas811, that comparing two notification tickets reflects the quality of Texas811's work product as similar to Lone Star's work product when, in fact, the tickets that customer was told to compare or provided to compare both originated from Texas811's work product.   On information and belief, based on

representations from other Texas811 customers and former Texas811 customers, Lone Star made similar representations, statements, and comments to other customers and former customers of Texas811.

49.     As described above, the foregoing statements and representations are materially false, misrepresented, and are and continue to be likely to cause confusion and mistake as to the nature characteristics and qualities of Texas811's and Lone Star's work product, goods, and services. Lone Star made its statements in commercial advertising or promotion for Lone Star's goods, services and/or commercial activity. Lone Star had an economic motivation for making its statements, as Lone Star was incentivized to sell its goods and services to Texas811's customers.

50.     Lone Star's statements and representations influenced the purchasing decisions of former Texas811 customers. Texas811 has lost customers who have left Texas811 and taken their business to Lone Star based on Lone Star's statements and misrepresentations. Accordingly, the statements and misrepresentations were material.

51.     Texas811's and Lone Star's products travel and travelled in interstate commerce.

52.     Lone Star's made its representations, statements and commentary as more fully set forth herein with knowledge or reckless disregard of their falsity and the resulting risk and damage to Texas811. Lone Star did so in a willful, deliberate, and/or fraudulent manner.

53.     Lone Star's acts constitute the use of false descriptions and false representations in interstate commerce in violation of § 43(a) of the Lanham Act. Based on such violations, Texas811 may recover its actual damages as well as Lone Star's profits, and the costs of this action. With regard to actual damages, Texas811 requests the Court enter judgment, according to the circumstances of this case, for a sum not exceeding three times the amount of Texas811's

actual damages. Moreover, because this case is exceptional, Texas811 may recover its reasonable attorneys' fees.

### Count III
### Violations of Texas Common Law of Unfair Competition

54.     Texas811 incorporates by reference all of the foregoing paragraphs.

55.     Texas common law prohibits unfair business practices by providing causes of action for "unfair competition." A tort cause of action, unfair competition involves an illegal act by the defendant that interfered with plaintiff's ability to conduct its business. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citing *Schoelkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App.—Dallas 1989, writ denied). The "illegal act" can be a violation of criminal law, but can also be an independent substantive tort. *Id.*

56.     Lone Star engaged in unfair competition by virtue of its advertising/marketing activity described above. By intentionally misrepresenting the nature, characteristics, or source of the goods and services it provides, and those of the good and services Texas811 provides, Lone Star committed the independent tort of fraud and/or misrepresentation upon Texas811's customers who, in reliance on the misrepresentations, terminated their relationship with Texas811 and joined Lone Star. Alternatively, Lone Star committed the independent tort of negligent misrepresentation when, in the course of its business, it supplied false information regarding the nature, characteristics, or source of the goods and services it provides, and those of the good and services Texas811 provides to Texas811 customers for their use in business transactions. In justifiable reliance on those misrepresentations, Texas811 customers terminated their relationship with Texas811 and joined Lone Star. Lone Star failed to exercise reasonable care in obtaining or communicating the information it conveyed. Lone Star's fraud, malice

and/or gross negligence in the above described acts entitles Texas811 to the recovery of exemplary damages.

57.     The foregoing illegal acts interfered with Texas811's ability to conduct its business by taking Texas811's customers. Texas811 suffered damages as a result.

### Count IV
### Unfair Competition by Misappropriation

58.     Texas811 incorporates by reference all of the foregoing paragraphs.

59.     Texas law provides a common law cause of action for misappropriation. The elements of a common law misappropriation claim are: "(i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.,* a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004) (quoting *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls*, Inc., 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied)).

60.     Texas811 expended extensive time, labor, skill, and money to create each Texas811 ticket. To create a ticket, Texas811 incurs significant labor, hardware, and software-related costs. Texas811 also provides specialized training to its employees that generate tickets and invests in certain quality assurance measures. Texas811 uses all of these resources to create a ticket of better quality and utility than a ticket created with information supplied by Lone Star.

61.     Lone Star takes the information that Texas811 generated through its specialized process, and then creates a ticket that appears to be a Lone Star ticket.  However, all of the unique information that goes into the higher-quality ticket was actually generated by Texas811, not Lone Star.  Therefore, Lone Star enjoys a competitive advantage over Texas811, because

Lone Star can "free-ride" on Texas811's efforts and create a ticket that is substantially identical to the superior Texas811 ticket without expending the same time, labor, skill, and money as Texas811. This scheme allows Lone Star to charge lower membership prices than Texas811 while marketing its ability to produce the same quality tickets that Texas811 produces.

62.     Moreover, because Lone star refuses to pay the actual costs incurred by Texas811, Texas811 suffers commercial damage in at least those amounts.

63.     Numerous Texas811 members have terminated their membership with Texas811 and joined Lone Star's membership as a result of Lone Star's conduct. Therefore, Lone Star's conduct caused additional commercial damage to Texas811.

64.     Lone Star's fraud, malice and/or gross negligence in the above described acts entitles Texas811 to the recovery of exemplary damages.

**PRAYER**

WHEREFORE, Plaintiff, Texas811, prays that Defendant, Lone Star, be cited to appear, and that upon final trial, this Court enter a judgment in favor of Texas811 and specifically:

(a)     declare that Texas811 may recover its actual costs in providing notice to Lone Star as permitted by § 251.105(a) of the Act and that such actual costs may include the allocable share of its actual, current costs, whether fixed or variable, attributable to the original, incoming locate requests which it receives, processes and sends notices of, to Lone Star under §§ 251.153(b) or 251.102(2), (3) of the Act;

(b)     declare that Texas811's invoices provided to Lone Star prior to trial under § 251.105(a) of the Act are for amounts which do not exceed Texas811's actual costs in providing notices to Lone Star under the Act;

(c)     award Texas811 damages against Lone Star for any unpaid invoices at the time of judgment from Texas811 to Lone Star for Texas811's actual costs recoverable under § 251.105(a), plus prejudgment interest at the maximum rate allowed by law on such unpaid invoices;

(d)     award Texas811 damages under the Lanham Act, to include an award to Texas811 of Lone Star's profits, damages in an amount not exceeding three times the amount of actual damages suffered by Texas811, the costs of this action, and Texas811's attorneys' fees for this exceptional case;

(e)     award Texas811 damages under the principles of Texas' unfair competition laws, to include actual damages and exemplary damages;

(f)     award Texas811 damages under the principles of Texas' misappropriation law, to include actual damages and exemplary damages;

(g)     award Texas811 its costs of suit and reasonable and necessary attorneys' fees to Texas811 as are equitable and just; and,

(h)     award Texas811 general relief.

5353540.1

Respectfully submitted,


By: _/s/ William B. Chaney_____

WILLIAM B. CHANEY
State Bar No. 04108500
wchaney@grayreed.com
RUSSELL E. JUMPER
State Bar No. 24050168
rjumper@grayreed.com
TREVOR C. LAWHORN
State Bar No. 24091706
tlawhorn@grayreed.com

GRAY REED & McGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332

ATTORNEYS FOR PLAINTIFF
TEXAS EXCAVATION SAFETY
SYSTEM, INC. d/b/a TEXAS811


## CERTIFICATE OF SERVICE

I certify that on this 20th day of February, 2019, I electronically filed the foregoing document using the Court's CM/ECF Filing System.   The Clerk of the Court will send notification of the filing to counsel of record, which constitutes service under Local Rule 5.1(d).


/s/ William B. Chaney_____
WILLIAM B. CHANEY